Filed 4/28/26  Sabahat v. Parvaneh CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ANN THUY SABAHAT, | |
| Cross-complainant and Appellant, | G064541 |
| v. | (Super. Ct. No. 30-2020-01161171) |
| RITA PARVANEH, | O P I N I O N |
| Cross-defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Nathan R. Scott, Judge. Appeal dismissed.

By the Law, Tanzeel Hak and Brian Ostler for Cross-complainant and Appellant.

Madison Law, Brett K. Wiseman and Susanna F. Wiseman for Cross-defendant and Respondent.

Ann Thuy Sabahat appeals from a June 14, 2024, order (June 2024 order), which, inter alia, confirmed Rita Parvaneh purchased Sabahat's membership interest in Royer Mansion, LLC (Royer) and directed the transfer of Sabahat's 50 percent interest in Royer to Parvaneh. On appeal, Sabahat challenges the valuation of her membership interest in Royer. Parvaneh argues Sabahat appealed from the incorrect order and should have appealed from the alternative decree issued in a March 8, 2024, minute order (March 2024 alternative decree) pursuant to Corporations Code section 17707.3, subdivision (c)(3) (all undesignated statutory references are to this code). We agree with Parvaneh and dismiss the appeal.

FACTUAL AND PROCEDURAL BACKGROUND

A dispute arose between Parvaneh and Sabahat, who each held a 50 percent membership interest in Royer. Sabahat filed a cross-complaint against Parvaneh and others, seeking, inter alia, the dissolution of Royer under section 17707.03. Parvaneh sought to avoid dissolution by purchasing Sabahat's membership interest in Royer. But as the parties were unable to agree on the fair market value of Sabahat's membership interest, Parvaneh moved to stay the dissolution proceedings under section 17707.03, subdivision (c)(2). Parvaneh requested the trial court to appoint disinterested appraisers to ascertain the fair market value of Sabahat's membership interest under section 17707.03, subdivision (c)(3).

After the appointment of appraisers and consideration of the parties' arguments, the trial court issued the March 2024 alternative decree under section 17707.03, subdivision (c)(3). The court ascertained the value of Sabahat's membership interest, gave Parvaneh the opportunity to purchase Sabahat's interest no later than May 31, 2024, and ordered the dissolution of Royer if Parvaneh failed to make a timely purchase. The court ordered

Parvaneh to provide proof of payment or a proposed order or judgment by June 7, 2024. It set the deadline for any objections to the proposed order or judgment as June 17, 2024.

Parvaneh filed a proposed order. The trial court adopted the proposed order in its June 2024 order. The court confirmed it received proof of payment in May 2024 and ordered, inter alia, Sabahat's 50 percent interest in Royer to be transferred to Parvaneh. A few days later, on June 17, 2024, Sabahat filed an objection to the proposed order, asking the court to include a provision to remove Sabahat "as a borrower and guarantor on the loan for" Royer's property.

In August 2024, Sabahat filed a notice of appeal from the June 2024 order.

DISCUSSION

I.

APPLICABLE LAW

"Section 17707.03, subdivision (a), authorizes any member of a limited liability company to file an action to dissolve the limited liability company in certain specified circumstances. The statutory grounds for dissolution include '[t]he management of the limited liability company is deadlocked or subject to internal dissension' (§ 17707.03, subd. (b)(4))." (*Cheng v. Coastal L.B. Associates, LLC* (2021) 69 Cal.App.5th 112, 119 (*Cheng*).)

"In any action for judicial dissolution, the other members of the limited liability company may avoid the dissolution by purchasing for cash the fair market value of the interests owned by the members initiating the dissolution proceeding. (§ 17707.03, subd. (c)(1).)" (*Cheng, supra,* 69 Cal.App.5th at p. 119.) If the parties are unable to agree on the fair market

3

value of the membership interests, then "[t]he court shall appoint three disinterested appraisers to appraise the fair market value of the membership interests owned by the moving parties, and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining that value. . . . The award of the appraisers or a majority of them, when confirmed by the court, shall be final and conclusive upon all parties. The court shall enter a decree that shall provide in the alternative for winding up and dissolution of the limited liability company, unless payment is made for the membership interests within the time specified by the decree. If the purchasing parties do not make payment for the membership interests within the time specified, judgment shall be entered against them and the surety or sureties on the bond for the amount of the expenses, including attorney's fees, of the [parties moving for dissolution]. Any member aggrieved by the action of the court may appeal therefrom." (§ 17707.03, subd. (c)(3).)

## II.

### APPEALABILITY

Parvaneh argues Sabahat appealed from the incorrect order, the June 2024 order, and that Sabahat should have appealed from the March 2024 alternative decree. Sabahat contends the June 2024 order was the proper order from which to appeal, as the valuation and buyout process was not completed until the entry of this order. Sabahat argues, even if she appealed from the incorrect order, the notice of appeal indicated she intended to appeal from the March 2024 alternative decree.

"'A trial court's order is appealable when it is made so by statute.'" (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1432.) "'An attempt to appeal from a nonappealable order does not give this court jurisdiction or authority to review it.' [Citation.] Consequently, it is the

4

duty of the court to dismiss an appeal from an order that is not appealable." (*Ibid.*)

Section 17707.03, subdivision (c)(3) provides, "Any member aggrieved by the action of the court may appeal therefrom." The phrase, "the action of the court," refers to the court's issuance of an alternative decree (also known as a valuation order). (*Ibid.*; *Cheng, supra,* 69 Cal.App.5th at p. 119; see *Dickson v. Rehmke* (2008) 164 Cal.App.4th 469, 476 (*Dickson*) [interpreting former § 17351, subd. (b)(3)].) Therefore, "the alternative decree is the pertinent action from which a party dissatisfied with the valuation process should take an appeal." (*Dickson,* at p. 477.)

*Dickson* is instructive. It involved a buyout motion, pursuant to former section 17351, analogous to Parvaneh's motion here. (See *Dickson, supra,* 164 Cal.App.4th at p. 473.) In *Dickson*, the trial court issued an alternative decree, which ascertained the value of the membership interests in a limited liability company. (*Ibid.*) It also provided the defendant an opportunity to purchase the plaintiff's interest by a date certain or allow the commencement of winding up or dissolution if the defendant did not tender payment of the determined amount in the decree. (*Ibid.*) After the defendant timely tendered, the court entered a judgment on plaintiff's underlying dissolution complaint. (*Ibid.*) The concurrence described the judgment entered as "incorporating the findings of fact of the [decree] and directing the transfer of [the plaintiff]'s membership interests to [the defendant]." (*Id.* at p. 479 (conc. opn. of Blease, Acting P. J.).) The defendant appealed from the judgment, rather than the alternative decree, challenging the valuation of the membership interests. (*Id.* at p. 473.)

The appellate court held the defendant should have appealed from the alternative decree, not the subsequent judgment, and dismissed the

5

appeal. (*Dickson, supra,* 164 Cal.App.4th at p. 473.) It explained: "The riddle in this appeal arises from the imprecise use of language in [former] section 17351, subdivision (b)(3). It provides for any number of juristic activities: the court's appointment of appraisers, the order of reference to them for the purpose of ascertaining the dissenting share and setting the procedures for producing necessary evidence, the court's confirmation of the unanimous or majority appraisal award (or determination de novo of the matter), the alternative decree that directs the winding up and dissolution of the company unless the purchasing parties tender their payment in a timely manner, and a judgment on their bond for costs if they fail to act. Yet the concluding provision for appellate review employs an entirely different term with a specific determinative: 'Any member aggrieved by *the action* of the court may appeal therefrom.' [Citation.] Considering that all the other juristic activities in [former] section 17351, subdivision (b)(3) are preliminary to the issuance of the alternative decree [citation], it is logical to conclude that the issuance of the decree is 'the' action to which the provision for appeal refers." (*Id.* at pp. 475–476.)

Here, the March 2024 alternative decree was appealable under section 17707.03, subdivision (c)(3), a statutory provision identical to former section 17351, subdivision (b)(3) at issue in *Dickson.* Section 17707.03, subdivision (c)(3) does not permit appeals from an order, subsequent to the alternative decree, confirming the membership interest was purchased, assigning the membership interest to the purchasing party, and effectively denying relief for the underlying dissolution claim. (See *Dickson, supra,* 164 Cal.App.4th at p. 476; *id.* at p. 479 (conc. opn. of Blease, Acting P. J.).) That an order or "judgment will follow the alternative decree upon a tender does not mean the party making or accepting the tender who is dissatisfied

6

with the valuation may await its entry to appeal that issue." (*Dickson, supra,* 164 Cal.App.4th at p. 476.) We view the June 2024 order, following the March 2024 alternative decree, as addressing the underlying dissolution claim "for the purpose of terminating *that* proceeding through denying the requested relief." (*Ibid.*) This subsequent June 2024 order "is not a vehicle for raising the issues of valuation on appeal, because the dissolution proceeding itself never embraced them." (*Ibid.*) Therefore, as Sabahat appealed from the June 2024 order and is challenging the valuation of her membership interest on appeal, she appealed from the incorrect order.

Sabahat asks us to construe the notice of appeal liberally, asserting "it was reasonably clear" she intended to appeal from the March 2024 alternative decree. "'[N]otices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.'" (*Verceles v. Los Angeles Unified School Dist.* (2021) 63 Cal.App.5th 776, 783; accord, Cal. Rules of Court, rule 8.100(a)(2).) "But there are limits to our ability to liberally construe a notice of appeal. 'The policy of liberally construing a notice of appeal in favor of its sufficiency [citation] does not apply if the notice is so specific it cannot be read as reaching a judgment or order not mentioned at all.' [Citations.] '[I]t is well "beyond liberal construction" to view an appeal from one order as an appeal from a "further and different order." [Citation.] "Despite the rule favoring liberal interpretation of notices of appeal, a notice of appeal will not be considered adequate if it completely omits any reference to the judgment being appealed." [Citation.] "The rule favoring appealability in cases of ambiguity cannot apply where there is a clear intention to appeal from only . . . one of two separate appealable judgments or orders."' [Citation.]

7

Therefore, when a notice of appeal manifests a "'clear and unmistakable'" intent to appeal only from one order, we cannot liberally construe the notice to apply to a different, omitted order." (*In re J.F.* (2019) 39 Cal.App.5th 70, 76.)

Here, in her notice of appeal, Sabahat specified a single order, the June 2024 order. She stated the title of the June 2024 order, "Order re: Buyout and Ownership of Royer," and she attached a copy of that order. She also noted section 17707.03 as the statutory provision authorizing the appeal. The notice of appeal contained no reference to any other order, despite her knowledge of the March 2024 alternative decree at the time of the appeal. Contrary to Sabahat's assertions, these facts show only she was trying to appeal from the June 2024 order. And the June 2024 order "did not embrace the special proceeding or its valuation issues." (*Dickson, supra,* 164 Cal.App.4th at p. 477.) "To repeat, the policy of liberal construction 'does not apply if the notice is *so specific* it cannot be read as reaching a judgment or order not mentioned at all.'" (*In re J.F., supra,* 39 Cal.App.5th at p. 78.) [1]

As we cannot liberally construe the notice of appeal to encompass the March 2024 alternative decree, we lack jurisdiction to review it and therefore the valuation issues in this case. [2]

---

[1] As we are unable to construe the notice of appeal liberally, we need not consider Sabahat's argument that an appeal from the March 2024 alternative decree was timely.

[2] On appeal, Sabahat also argues the trial court erred by issuing its June 2024 order before the June 17, 2024, deadline to object to the proposed order. We seriously question whether the June 2024 order is appealable under section 17707.03. Sabahat offers no argument showing why the June 2024 order is appealable on this issue. Section 17707.03, subdivision (c)(3) does not specify such an order is appealable. Nor is the June 2024 order

## DISPOSITION

The appeal is dismissed. Respondent is entitled to costs on appeal.


MOTOIKE, ACTING P. J.

WE CONCUR:


MOORE, J.


SANCHEZ, J.

---

a final judgment in the case. We therefore lack jurisdiction to review the June 2024 order, to the extent Sabahat challenges it, and dismiss the appeal.

Even if the June 2024 order were appealable, we would conclude Sabahat provided an inadequate record on appeal and would decline to address this issue. """[A] record is inadequate . . . if the appellant predicates error only on the part of the record he [or she] provides the trial court, but ignores or does not present to the appellate court portions of the proceedings below which may provide grounds upon which the decision of the trial court could be affirmed.""" (*Jade Fashion & Co., Inc. v. Harkham Industries, Inc.* (2014) 229 Cal.App.4th 635, 644.) According to Parvaneh, on June 20, 2024, the court held a conference with the parties, discussed Sabahat's June 17, 2024, objection to the proposed order, and overruled the objection without prejudice. Sabahat omitted the minutes of this conference in her appendix, failing to present a portion of the proceedings below that could provide grounds to affirm.

9